UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SQUARE D COMPANY, POWER MEASUREMENT, INC., and POWER MEASUREMENT, LTD., <br><br> Plaintiffs <br> v. <br><br> E.I. ELECTRONICS, INC., and E.I. ELECTRONICS, LLC, <br><br> Defendants | Case. No. 06 C 5079 <br><br> Magistrate Judge Arlander Keys |

## MEMORANDUM OPINION AND ORDER

Plaintiff Square D filed this lawsuit on September 20, 2006, claiming infringement of 11 different patents, all having to do with revenue meters. Defendant EI answered the complaint and filed a counterclaim, alleging infringement of two of its own patents. Two years later, on September 19, 2008, Square D amended its complaint to add one more claim of infringement and one more patent - United States Patent No. 7.415,368 (the '368 patent). EI quickly amended its counterclaims. EI's amended counterclaims include the same patent infringement claims included in the initial counterclaim, as well as a claim of infringement of one additional patent. But, significantly, EI's amended counterclaims also include a claim for violation of the Sherman Act, a claim that Square D procured the '368 patent by

fraud and has asserted the '368 patent to restrain competition,[1] and a state law claim alleging unfair competition. Square D quickly filed a motion to sever and stay the amended counterclaims. The Court held a hearing on the motion and allowed the parties to brief the relevant issues. The matter is now ripe for resolution.

Courts have broad discretion to control discovery and to bifurcate trials. *E.g., DSM Desotech Inc. v. 3D Systems Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *1 (N.D. Ill. Oct. 28, 2008)(citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)); *United States Gypsum Co. v. National Gypsum Co.*, No. 89 C 7533, 1994 WL 74989, at *1 (N.D. Ill. March 10, 1994). Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." "One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Matsushita Electric Industrial Co. v. CMC Magnetics Corp.*, No. C 06-4538 WHA, 2007 WL

---

[1] These claims are known as *Walker Process* claims. *See Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965)("the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present").

219779, at *2 (N.D. Cal. Jan. 29, 2007)(citing *Ellingson Timber Co. v. Great Northern Railway Co.*, 424 F.2d 497, 499 (9th Cir. 1970)); *Netflix, Inc. v. Blockbuster, Inc.*, No. C 06-02361 WHA, 2006 WL 2458717, at *9 (N.D. Cal. Aug. 22, 2006).

In the past, courts fairly consistently determined that, when antitrust claims were asserted in a patent infringement suit, bifurcation made sense; according to those courts, the interests of economy and convenience both counseled in favor of severing the antitrust and similar issues from the issues of patent validity and infringement and staying discovery on the former until the patent issues had been resolved. *See, e.g., United States Gypsum Co.*, 1994 WL 74989, at *2; *Baxter International, Inc. v. Cobe Lab, Inc.*, No. 89 C 9460, 1992 WL 77665, at *1 (N.D. Ill. April 7, 1992). EI has argued that the practice of bifurcating antitrust claims from patent claims is no longer necessarily routine, and it cites the *Netflix* case to support that argument. The Court agrees that the decision to sever and/or stay is not a matter of routine, but depends very much on the facts of the particular case. *See, e.g., Netflix*, 2006 WL 2458717, at *9-*10; *United States Gypsum*, 1994 WL 74989, at *1. And, in this case, a couple of factors convince the Court that separation of the issues is appropriate.

First, to be sure, EI's amended counterclaims have significantly altered the landscape of this case. Indeed, in its

initial counterclaim EI described the nature of it's case against Square D as patent infringement; in its amended counterclaim, it characterizes the nature of its case first and foremost as antitrust.

Second, "[a]s the Supreme Court, the Seventh Circuit, and this court have all recognized, discovery in *any* antitrust case can quickly become enormously expensive and burdensome to defendants. *DSM*, 2008 WL 4812440, at *2 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1967 (2007); *Lupia v. Stella D'Oro Biscuit Co.*, 586 F.2d 1163, 1167 (7th Cir. 1978); *Asahi Glass Co. v. Pentech Pharm., Inc.*, 289 F.Supp. 2d 986, 995 (N.D. Ill. 2003)). Beyond the expense, antitrust issues and patent issues are notoriously difficult for juries to comprehend; combining the two in a single trial would just compound the problem of juror confusion. Even *Netflix*, which rejected the idea that discovery on antitrust issues should automatically be stayed pending resolution of patent issues, recognized that the issues may have to be tried separately. *See Netflix*, 2006 WL 2458717, at *10.

At the hearing on the motion to sever, counsel for EI acknowledged that his client's amended counterclaims were filed "late in the game." *See* Transcript, p. 4. But he represented that they could not have been filed earlier, because they were based on Square D's amended complaint, which was also filed

4

fairly late in the game. *Id.* Counsel further represented that, in his view, the counterclaims would not require significant additional discovery because "[t]hese *Walker Process* counterclaims that come up sometimes in this sort of a situation are almost always entirely subsumed in the existing defenses that the defendant will raise to the patents that are being asserted." *Id.* But that is not entirely true.

Although there may be some overlapping factual issues between EI's claim that Square D obtained the '368 patent by fraud and EI's claim that the allegedly infringed patent is invalid, legally there is a big difference. *See, e.g., Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007)(to prevail on a *Walker Process* claim, counterclaimant must prove that the patent-in-suit was obtained through actual fraud upon the Patent and Trademark Office; it is not enough to show inequitable conduct); *CNET Network, Inc. V. Etilize, Inc.*, --- F. Supp. 2d. ---, No., C 06-5378 MHP, 2008 WL 4666839, at *7 (N.D. Cal. Oct. 22, 2008)("*Walker Process* fraud claims require proof of elements beyond those required to establish the defense of inequitable conduct, with no equitable balancing between the elements."). Thus, unless EI is able to prove its inequitable conduct claim, its Walker Process claim would never even get off the ground. This fact counsels in favor of bifurcating, trying to avoid the expense and hassle of dealing with the antitrust

5

claims until it is clear that the attendant burden is necessary.

Solidifying this conclusion is the fact that the '368 patent is just one of eleven patents claimed to be infringed by EI; there are no antitrust or fraud claims asserted with respect to those other ten patents asserted in Square D's complaint. Moreover, even if the antitrust issues ultimately do go forward, it's not as if EI would have to start from ground zero again. To the extent EI is able to muster proof to support its inequitable conduct allegation, that proof would be a starting point for the *Walker Process* claims, and if and when we reach those claims, there will be no need for EI to duplicate its efforts. But there is simply no point in burdening the Court or the parties unless and until it becomes clear that the antitrust issues will go forward.

## Conclusion

For the reasons set forth above, Square D's motion to sever and stay EI's amended counterclaims [#112] is granted. The case is set for a status hearing on January 28, 2009 at 9:00 a.m.

Date: January 15, 2009

ENTER:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge