MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SQUARE D COMPANY, POWER )
MEASUREMENT, INC., and POWER )
MEASUREMENT, LTD., )
 )
      Plaintiffs )   No. 06 C 5079
 )
      v. )
 )
E.I. ELECTRONICS, INC., and )   Magistrate Judge Arlander Keys
INC., E.I. ELECTRONICS, LLC, )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Square D filed this lawsuit on September 20, 2006, claiming infringement of 11 different patents: U.S. Patent No. 7,006,934 (the '934 Patent); U.S. Patent No. 6,983,211 (the '211 Patent); U.S. Patent No. 6,792,364 (the '364 Patent); U.S. Patent No. 6,792,337 (the '337 Patent); U.S. Patent No. 6,751,562 (the '562 Patent); U.S. Patent No. 6,745,138 (the '138 Patent); U.S. Patent No. 6.737,855 (the '855 Patent); U.S. Patent No. 6,611,922 (the '922 Patent); U.S. Patent No. 6,186,842 (the '842 Patent); U.S. Patent No. 6,185,508 (the '508 Patent); and U.S. Patent No. 5,831,428 (the '428 Patent) - all of which have to do with electrical power meters and revenue meters. Defendant EI answered the complaint and filed a counterclaim, alleging infringement of two of its own patents, U.S. Patent No. 6,751,563 and U.S. Patent No. 6,636,030. Two years later, on September 19, 2008, Square D amended its complaint to add one more claim of infringement, of United States Patent No. 7,415,368 (the '368

Patent). EI quickly amended its counterclaim to add another claim of infringement as well (U.S. Patent No. 7,305,310), and to allege *Walker Process* claims. *See Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965). Square D moved to sever and stay the amended counterclaim, and, after holding a hearing on the motion and after allowing the parties to brief the issue, the Court granted the motion. Thereafter, the parties continued to comply with the scheduling order, conducting discovery without any real issue. In fact, the parties appear to have worked well together, using discovery (as it is intended) to winnow the issues for trial. That cooperative process hit a few snags recently, however, and the case is currently before the Court on a number of motions, each of which is considered below.

A. <u>Square D's Motion to Bifurcate</u>

First, Square D has moved to bifurcate and stay its claims arising out of the '337 and '368 patents, so that they can be tried instead with EI's stayed counterclaims. In making this motion, Square D represents that it had an informal, yet mutually-understood agreement that it would be dropping its claims involving the '337 and '368 patents based upon assurances and information obtained during discovery that EI had changed its designs such that its products no longer infringed those patents. Accordingly, discovery was not obtained on issues concerning

those products or those patents. And, on June 2, 2009, Square D formally moved to drop the '337 and '368 patents (along with two other patents) from the lawsuit. One day later, on June 3, 2009, EI notified Square D that it planned to revert back to its original - and, in Square D's view, infringing - designs. Square D then notified EI that, if that was the case, it would continue to assert the dropped patents in this lawsuit. But because discovery on these patents and issues was not taken, as a practical matter, bringing these claims back into the case now would stall the rest of the case. Seeking to avoid that result, Square D has asked the Court to bifurcate and stay claims arising out of those patents. EI does not object. Accordingly, the Court grants the motion to bifurcate [#157]; this makes particularly good sense in light of the Court's earlier decision to bifurcate EI's counterclaims.

B. <u>Square D's Motion for Leave to Amend [#154, 165]</u>

Next, Square D seeks leave to amend its complaint to add a claim of willful infringement. The substance of this claim is based upon EI's decision, referenced above, that, in light of Square D's decision to drop the '337 and '368 Patents from the lawsuit, it would "revert to its product designs as implemented at the time [Plaintiffs] filed this lawsuit."

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely given "when justice so requires." EI has

3

indicated that it does not object to Square D's motion to amend its complaint, and the Court will, therefore, grant Square D leave to do so. EI does, however, object to any attempt on Square D's part to force its hand with respect to any potential reliance on an advice-of-counsel defense. EI argues that it should not be required to make this election - or to disclose its election to Square D - unless and until Square D makes out a *prima facie* case of willful infringement.

The Federal Circuit has recognized the dilemma faced by a party wishing to defend against a willful infringement claim with an advice-of-counsel defense: once the defense is invoked, the attorney-client privilege is waived; but up until that time, the opinions of counsel are protected from disclosure and no negative inference may be drawn from the refusal to disclose them. *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004); *Quantum Corp. V. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991). EI has not yet indicated whether it will rely on an advice-of-counsel defense; indeed, Square D has not yet even alleged a willful infringement claim (as explained above, the Court has now granted Square D leave to do so, however).

To the extent EI is suggesting that it need not make its election concerning the advice-of-counsel defense until after

Square D has put on its case-in-chief at trial, that is absurd. Of course Square D has the right to conduct discovery on the issue, just as EI has the right to conduct discovery before making its election. The election is therefore appropriately made – EI's hand is appropriately forced – during the discovery phase of the case.

Given the posture of the case, however – given that discovery is closed at this point, given that the Court has already bifurcated and stayed certain claims and defenses, and given that the parties have already filed claim construction briefs and are anxious to proceed with that phase of the proceedings – the Court is not inclined to open this can of worms at this time. Rather, it makes sense to table the issue until after the Court construes the relevant claims; at that point, the parties should have a better idea of where things stand concerning infringement, invalidity, etc., and, if necessary, they can then take up the issue of willfulness (and the attendant issues concerning advice-of-counsel) at that time. *See In re Seagate Technology LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007)("Because patent infringement is a strict liability offense, the nature of the offense is only relevant in determining whether enhanced damages are warranted."). This makes particularly good sense, given that discovery will be reopened anyway for the bifurcated claims and defenses.

C.  <u>Square D's Motion to Compel Documents, to Deem EI's Claim of Attorney/Client Privilege Waived & for an *in Camera* Inspection</u> [#159]

Finally, Square D has filed a motion seeking: (1) to compel EI to produce communications, over the objection of attorney-client privilege, between EI and (a) its patent infringement insurance carrier, and (b) an unrelated third-party in connection with a non-exclusive technology license agreement; (2) to deem the attorney-client privilege waived as to certain subject matter relating to whether EI relied on the opinions of counsel when deciding to change the design of its accused products after Square D filed suit; and (3) an *in camera* inspection of the written legal opinions concerning whether EI's accused products infringed the Square D patents-in-suit. EI does not oppose Square D's request for an *in camera* inspection and, in fact, in response to the motion, EI has already submitted what it has represented are all of the opinions of counsel rendered in connection with the patents in suit. EI strenuously objects, however, to having to disclose attorney/client privileged materials, and has steadfastly maintained that it has not waived any privilege.

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location

6

of any documents or other tangible things and the identity and locations of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Here, EI has asserted, and Square D has challenged the assertion of, several variations of the attorney-client privilege, which protects confidential communications between a client and his attorney for the purpose of obtaining legal advice. *Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000). In determining whether the privilege applies to communications, the Seventh Circuit has adopted the following test:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). "[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly," *Evans*, 113 F.3d at 1461, and "protects only those disclosures - necessary to obtain informed legal advice - which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976). Indeed, "only if [the communications] constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence," will

7

the privilege attach. *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990).

Moreover, the privilege may be "explicitly or implicitly waived by the client and is subject to a number of restrictions and exceptions." *White*, 950 F.2d at 430. The privilege may be waived if the party knowingly discloses confidential information to a third party. *Beneficial Franchise Co., Inc. v. Bank One., N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001). The party asserting the privilege bears the burden of showing that the privilege applies and that it has not been waived. *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

### (1) Discovery Regarding Communications Between EI and Siemens, and Between EI and its Insurer

Initially, Square D seeks to compel discovery concerning certain communications between EI and Siemens and between EI and the brokers and insurers who provided EI with patent infringement insurance. With regard to the former, EI has asserted a "community of interest" privilege and has refused to provide discovery; with regard to the latter, EI has asserted an "insurer/insured" privilege as a basis for its refusal to provide discovery. Square D challenges both assertions.

At his deposition, Erran Kagan, EI's 30(b)(6) witness, was asked about concerns that arose during negotiations between EI and Seimens relating to a technology license agreement; the concerns involved whether any EI products infringed patents held

by PML.[1] Mr. Kagan testified that he recalled discussing the issue with Siemens, Kagan Dep., pp. 176, but his attorney did not allow him to answer questions concerning the substance of those discussions, arguing that the questions "would call upon the witness to disclose privileged communications that's the subject of a community of interest between Siemens and Electro Industries and I advise the witness not to answer based on the assertion of the attorney/client privilege." *See* Kagan Dep., p. 176.

After a break, counsel stated that EI was "asserting a privilege as to these communications, but Mr. Kagan can give you a description of what happened foundationally. In other words, we're not intending to waive anything, but he can give a description to what happened to lay the foundation for the assertion of the privilege so go ahead, Mr. Kagan." Kagan Dep., p. 182.

Later in the deposition, Mr. Kagan was asked about whether his patent insurance provider requested any of the opinions EI had obtained concerning Square D/PML's patents, and his attorney instructed him not to answer on the basis of privilege, arguing that "[t]he discussions with the insurance company about specific patents and insured risks, those are privileged communications . . . ." Kagan Dep., p. 206. When asked whether there were

---

[1] Square D acquired and merged with PMI in 2005; at that time, Square D became the exclusive licensee of PML, a wholly-owned subsidiary of PMI.

lawyers present during those discussions and whether any lawyers present were EI lawyers or insurance company lawyers, Mr. Kagan testified that he did not remember. *Id.*, p. 206-07.

Square D has challenged EI's assertion of privilege based upon both the "community of interest" with Siemens and the insurer/insured relationship. EI argues that its communications with Siemens were privileged based upon the parties' execution of a "joint defense agreement" and it argues that any communications between it, its insurer and the relevant brokers are similarly privileged because of "their confidentiality agreements, the insurer's contractual duty of cooperation, and its participation in the conduct of the defense." The Court rejects EI's arguments on these privileges.

First, the "common interest" or "joint defense" doctrine "generally allows a defendant to assert the attorney-client privilege to protect his statements made in confidence not only to his own lawyer, but to an attorney for a co-defendant for a common purpose related to the defense of both." *For Your Ease Only, Inc. V. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 1989611, at *2 (N.D. Ill. April 28, 2003)(citing *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997))(internal quotations and citations omitted). "To maintain the privilege, the common interest must relate to a litigation interest, and not merely a common business interest." *Id.* (citing *Medcom Holding Co. v.*

*Baxter Travenol Labs., Inc.*, 689 F.Supp. 841, 845 (N.D. Ill. 1988). *See also Graco Children's Products, Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, No. 95 C 1303, 1995 WL 360590, at *5 (N.D. Ill. June 14, 1995)(for the common interest exception to apply, the interest "'must be identical, not similar, and be legal, not solely commercial.'")(citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D. S.C. 1974). "The burden of demonstrating the existence of a joint defense agreement falls on the person claiming it." *Id.* (citing *Ocean Atlantic Development Corp. v. Willow Tree Farm*, 2002 WL 649043, *5 (N.D. Ill. April 19, 2002)). "Merely because the subject of a document deals with a patent, this fact alone is not enough to cloak such a communication within the attorney-client privilege." *Graco*, 1995 WL 360590, at *5 (citing *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 8 (N.D. Ill. 1980)).

Here, EI has not demonstrated that its interest is identical to Siemens' interest – indeed, there is no indication that Siemens is facing any threat of suit from Square D; nor has EI demonstrated that it shared a common legal interest with Siemens, as opposed to a common commercial interest. For that matter, EI has not even demonstrated that the subject communications were made to or by an attorney.

Additionally, as EI seems to recognize, to qualify for protection under Illinois's insurer-insured privilege, "the

situation must be such that an insurer is defending or participating in the defense of an insured." *Cars R Us Sales and Rentals, Inc. v. Ford Motor Co.*, No. 08 C 50270, 2009 WL 1703123, at *3 (N.D. Ill. June 18, 2009)(citing *Pietro v. Marriott Senior Living Services, Inc.*, 348 Ill. App. 3d 541, 551, 810 N.E.2d 217, 226 (Ill. App. Ct. 2004)). At this point, EI has not shown that that is the case here; nor has it shown that any of the communications were made to or by attorneys or agents of the insurer, another prerequisite. *See Urban Outfitters, Inc. V. DPIC Companies, Inc.*, 203 F.R.D. 376, 379 (N.D. Ill. 2001)(citing *Rapps v. Keldermans*, 257 Ill. App. 3d 205, 211-212, 628 N.E.2d 818, 822 (1993)).

In response to Square D's motion, EI submitted a declaration from Robert Fletcher, President of Intellectual Property Insurance Services Corporation, who stated that, in September 2005, EI obtained a quote for patent Infringement Liability Insurance, and that, ultimately, EI sought and obtained insurance under an agreement dated February 1, 2006; according to Mr. Fletcher, as part of the negotiations leading up to the execution of that insurance contract, he rendered legal advice to IPISC "relating to the relevance of third party intellectual property and other matters." Fletcher Declaration, ¶7. But Square D wasn't asking about this advice or any other legal advice when Mr. Kagan and his attorney invoked the privilege. That may have

12

been where the questioning was headed, but counsel and Mr. Kagan cut things off long before it got there. When the privilege was invoked, Square D was asking whether EI's insurer asked to see the opinions of counsel - there is simply nothing privileged about that communication. At some point, EI may properly claim privilege with respect to certain communications. But the issue must be resolved on a communication-by-communication or document-by-document basis, see Graco, 1995 WL 360590, at *4, and so far, the communications asked about have fallen outside the scope of the claimed privilege.

Having determined that Mr. Kagan and his attorney improperly invoked the privilege with respect to at least some of the areas of inquiry, the Court must determine what should be done about it. At bottom, the questions that Mr. Kagan refused to answer because of privilege all have to do with EI's knowledge and awareness, EI's state of mind, at various points in time. Presumably, this discovery goes to Square D's willful infringement claim (which has not yet been alleged). Thus, although Mr. Kagan (and possibly other designated witnesses) will have to sit again for deposition, and although EI must provide discovery on these issues, there is no urgency to the matter. Instead, the Court will allow Square D to take up the issues again when discovery is reopened after claim construction.

(2) <u>Discovery Relating to Opinions of Counsel</u>

Finally, Square D seeks to compel Erran Kagan to provide deposition testimony concerning the existence of (and substance of) opinions EI may have obtained - matters for which he claimed privilege. At his deposition session on April 29, 2009, Mr. Kagan was asked by counsel for Square D about why EI held back the launch of its new Shark product in November 2006, and Mr. Kagan raised the issue of attorney-client privilege. Initially, Mr. Kagan testified that "[a]fter the lawsuit was started, I didn't want to launch a product without legal advice and I was waiting to get that legal advice so even though the product was about to go, I held it back." Kagan Dep., p. 118. As a follow up, counsel for Square D then asked whether EI had ever obtained that advice, which gave rise to the issue of attorney-client privilege:

> Q. Did you ever obtain a written opinion of counsel relating to the validity or infringement of each of the patents asserted in this litigation?
>
> Mr. Lyerla: You can say yes or no.
>
> A. Related to what product?
>
> Q. Any products?
>
> A. Yes.
>
> Q. On each patent, correct?
>
> A. I don't want to get into what the subject of the opinion was.

Kagan Dep., p. 119. After a break, discussions on the subject

14

continued. Counsel for EI stated,

> It's clear we are asserting the privilege as to these opinions. There is no intent to waive the privilege for purposes of this lawsuit. There would not be any point to it based on the pleadings that presently exist so I will let him give a tiny but of explanation that I believe is appropriate foundationally without going into the subject matter of anything so in response to the last question, Mr. Kagan, you can elaborate a little bit.

And then Mr. Kagan testified as follows:

> A. In regards to the opinions, I have a whole bunch of opinions on a bunch of different products that talk about patents in this lawsuit. I just don't remember if it covers – to the best of my recollection we covered every patent, but I just don't fully remember. That's my answer.

Kagan Dep., p. 121.

Thereafter, counsel for Square D continued to question Mr. Kagan about the opinions he referenced. And counsel for EI instructed Mr. Kagan not to answer on the basis of privilege. Counsel for Square D explained that he was trying to find out which patents EI had opinions on, and counsel for EI indicated that he would not allow Mr. Kagan to get into that.

With respect to waiver, Square D argues that Mr. Kagan's testimony opened the door to privileged communications, and that, accordingly, he must now be compelled to disclose in full what he disclosed in part. Specifically, Mr. Kagan did testify that he obtained an opinion concerning the '428 Patent, but he refused to testify about what, if anything, EI changed in response to that opinion; Kagan Dep., pp. 240-241. He also testified, when asked

15

whether he obtained an opinion of counsel on the '508 Patent, "I don't fully recall which patents I have the opinions on, but I believe we did get an opinion on the '508." *Id.*, p. 245. He then went on to testify that he did not make any changes to any EI products based upon the opinion concerning the '428 or based upon the opinion concerning the '508 Patent. Kagan Dep., p. 248-249. With regard to the '842 Patent, he testified that EI did obtain an opinion of counsel, and that it did not make any changes to any EI product based upon that opinion. Kagan Dep., pp. 249-50. Counsel for Square D then attempted to ask the same questions - did you get an opinion, and, if so, did you change any product on the basis of that opinion - with regard to the '934 Patent, the '211 Patent, the '364 Patent, the '562 Patent, and the '138 Patent; counsel for EI objected to those questions, arguing that the questions were not being asked for any proper purpose, that they were not calculated to lead to anything that could be used at trial, and that they were intrusive of the privilege. Kagan Dep., p. 250-51. He instructed Mr. Kagan not to answer, and Mr. Kagan followed that advice. Counsel for Square D moved on.

Square D now argues that the questions it asked did not implicate any privilege and that, if they did, Mr. Kagan waived that privilege by answering questions as to some of the patents. First, as noted, EI has submitted its attorney opinions in camera

16

and they are precisely the type of communications intended to be covered by the attorney-client privilege. To be sure, if counsel for Square D had asked Mr. Kagan what the opinions advised EI to do, or whether those opinions advised EI to change its products, those questions would have implicated the privilege and Mr. Kagan and his attorney would have been right to refuse to answer on the basis of privilege. Presumably, even Square D would concede as much. It's true that counsel for Square D didn't ask these exact questions. But the questions he did ask seek the exact same information, but in a much more subtle way. Mr. Kagan was right to feel uncomfortable about the whole line of questioning, and counsel for EI was right to invoke the privilege. Counsel for Square D argues that discovery was appropriate on these issues because EI had asserted an estoppel claim. But even if the opinions and actions were relevant to the issue of estoppel, they would still be protected from disclosure. *E.g., Chamberlain Group v. Interlogix, Inc.*, No. 01 C 6157, 2002 WL 467153, at *2-3 (N.D. Ill. March 27, 2002).

The questions flagged by Square D are objectionable because they attempt to ascertain, via the back door, what the infringement opinions said; they linked the issue of changes EI may have made to the opinions EI received from its lawyers. Those issues fall squarely within the privilege; as explained above, at some point EI may be required to disclose the opinions

and share the substance thereof, but that time has not yet come (and it certainly hadn't come when Mr. Kagan was being deposed).

The fact of the matter is that Square D could have asked about changes EI made to its products without linking the issue to privileged communications - indeed, Square D did just that at the deposition of Frederick Slota, another 30(b)(6) witness. Mr. Slota testified at his deposition that certain features, (including total web solutions, web explorer, the web alarm, web reacher, and ElectroLogic) were removed from some of EI's products (the Nexus 1250, Nexus 1260 and 1270, Nexus 1252, Nexus 1262, Nexus 1272 and the Nexus 1500), in mid-2008, not because EI thought those features infringed any patents, but because those features did not drive sales and were easily removed, and to eliminate any possibility of suit for infringement. *See Slota Dep.*, pp. 86-87.

In short, the Court finds that EI properly invoked the attorney-client privilege with respect to questions asked at Mr. Kagan's deposition about infringement opinions and about changes EI may have made to its products in response to those opinions. The Court next considers whether EI waived the privilege.

As explained, Square D argues that, by answering the questions asked regarding whether EI obtained opinions concerning some patents and whether EI made changes to its products based on those opinions, Mr. Kagan waived the privilege and must now be

compelled to answer the same questions concerning all of the patents at issue. Assuming for the moment that Mr. Kagan's answers actually disclosed confidential attorney-client communications, the Court must consider whether that disclosure is enough to waive the privilege with respect to all of the patents.

To determine whether a party has waived the attorney-client privilege, the Court employs a balancing approach, considering "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Harmony Gold,* 169 F.R.D. at 116-17 (citing *Golden Valley Microwave Foods, Inc.,* 132 F.R.D. at 208). Rule 502 of the Federal Rules of Evidence also provides guidance. According to that rule, the disclosure of privileged communications operates as a waiver as to undisclosed communications only if the disclosure is intentional; if the disclosure is inadvertent, there is no waiver. EI had no intent to disclose privilege communications; indeed, Mr. Kagan took great pains to ensure that he did not disclose any privilege communications, and counsel for EI made clear that it was trying its best to preserve the privilege to the fullest extent.

Based upon its in camera review of the opinions of counsel, the Court is satisfied that they are privileged and that they

need not be disclosed in any form at present – whether directly, or in response to backdoor deposition questions. To be sure, when and if EI indicates that it will rely on its infringement opinions and assert an advice-of-counsel defense, EI will then have to disclose these privileged communications. For now, however, the privilege remains intact.

## Conclusion

For the reasons explained above, Square D's Motion to Bifurcate [#157] and Square D's Motion for Leave to Amend its Complaint [#165] are both granted. Additionally, Square D's Motion to Compel Documents, to Deem the Attorney/Client Privilege Waived and for an *In Camera* Inspection of Documents Alleged to be Protected by the Attorney-Client Privilege [#159] is granted in part and denied in part; the request for an *in camera* inspection is granted, the motion to compel discovery regarding communications between EI and Siemens and EI and its Insurer is granted (though such discovery is stayed pending claim construction); the motion to deem the attorney-client privilege waived is denied, as is Square D's request to compel deposition testimony concerning infringement opinions and changes made to EI products on the basis of those opinions.

Dated: September 30, 2009          ENTER:

                                                                     ARLANDER KEYS
                                                                      United States Magistrate Judge